## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| **DORA ROWE,** | § | |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| *versus* | § | |
| | § | **CIVIL ACTION NO.  1:22-cv-191** |
| **American Gold Reserve, LLC.,** | § | |
| **Jounte A. McDaniel,** | § | |
| **Kimberly D. Poulard,** | § | |
| **Brandon J. McDaniel,** | § | |
| | § | |
| **DEFENDANTS** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiff Dora Rowe ("Rowe" or "Plaintiff") files this her Original Complaint complaining of the actions of Defendants Jounte A. McDaniel, Kimberly D. Poulard, Brandon J. McDaniel, and American Gold Reserve, LLC,, (together, "Defendants"), and respectfully shows the following:

## NATURE OF THE CASE

1.    This action is brought under Texas law by Plaintiff Dora Rowe ("Rowe") against Defendants Jounte A. McDaniel, Kimberly D. Poulard, Brandon J. McDaniel, and American Gold Reserve, LLC,, (together, "Defendants"), for their unlawful, false, misleading and unconscionable misrepresentations and sales tactics, that resulted in direct damages to Plaintiff

1

Dora Rowe in the amount of approximately Six Hundred Ten Thousand Dollars ($610,000.00) from the purchase of coins that are not worth the value at which they were purchased and will never attain the value as claimed or return on investment as represented.  Rowe seeks recovery of actual damages, consequential damages, punitive damages, statutory treble damages, pre- and post-judgment interest, attorneys' fees, litigation expenses and costs of suit.

## JURISDICTION AND VENUE

**2.**    This Court has subject matter jurisdiction over Dora Rowe's claims pursuant to (i) 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and the Parties are citizens of different states (diversity), and (ii) 28 U.S.C. § 1367 (supplemental jurisdiction). This Court also has *in personam* jurisdiction over Defendants because at all relevant times, at least one Defendant resided, maintained citizenship, were found, had agents, conducted business and/or sold the coins at issue in this case to Rowe in and/or from the Eastern District of Texas.

**3.**    Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C § 1391(a) because, at all relevant times, at least one Defendant resided, were found, had agents and/or conducted business in the Eastern District of Texas.

## PARTIES

**4.**    **Plaintiff Dora Rowe** ("Rowe") is a citizen and resident of Edmonton, Kentucky,

**5.**    **Defendant American Gold Reserve, LLC** ("AGR") is a privately-held corporation organized under the State of Texas with its principal place of business located in Harris County, Texas.  It can be served through its agent of service, Ms. Kinberly D. Poulard, at the registered office at 10333 Harwin Dr., Suite 573, Houston, Texas 77036, which is also this Defendants principal place of business.

6.     **Defendant Jounte A. McDaniel** ("Jounte McDaniel') a citizen and resident of Richmond, Fort Bend County, Texas.  No service is requested at this time, as waiver of service will be requested under Rule 4, Fed. Rules Civ. Proc. If service becomes necessary, service can be had at his last known residential address at 26226 Riley Glen Dr., Richmond, Texas 77406, or his business address at 10333 Harwin Dr., Suite 573, Houston, Texas 77036.

7.     **Defendant Brandon J. McDaniel** ("Brandon McDaniel") is a citizen and resident of Richmond, Fort Bend County, Texas.  No service is requested at this time, as waiver of service will be requested under Rule 4, Fed. Rules Civ. Proc. If service becomes necessary, service can be had at his last known residential address at 21023 Cordell Landing Dr., Richmond, Texas 77407, or his business address at 10333 Harwin Dr., Suite 573, Houston, Texas 77036.

8.     **Defendant Kimberly D. Poulard** is a citizen and resident of Beaumont, Jefferson County, Texas. No service is requested at this time, as waiver of service will be requested under Rule 4, Fed. Rules Civ. Proc. If service becomes necessary, service can be had at her last known residence at 5375 Phelps Road, Beaumont, Texas 77705.

## FACTUAL BACKGROUND

9.     The Defendants operate a sales and telemarketing operation for the purpose of selling collectible numismatic, semi-numismatic, and bullion coins[1] directly to consumers over the telephone and via the internet. Defendants themselves and through various employees make thousands of intrastate and interstate sales calls per month — via the telephone — and ship these coins by the interstate mails and private interstate delivery services. Defendants, using various unscrupulous techniques, "upsell" coins at inflated prices and continue their sham until the

---

[1] The term "*numismatic*" refers to collectible coins whose value is based upon qualities other than the metal content of the coin, such as appearance, population, grade, rarity, and other attributes.  "*Semi-numismatic*" refers to coins whose value partially derives from their numismatic value and partially from the value of the precious metal content.  *Bullion* coins derive their value almost entirely from the fair market value of the precious metal content.

customer runs out of money, tires of buying coins, or discovers the true value of the fraudulently priced coins.  This tactic has been condemned by the United States Senate, the Federal Trade Commission, various States' Attorneys General and States' Security commissions. Precious metal fraud investigation by the United States Senate Special Committee on Aging revealed that the "overwhelming number of victims in precious metal fraud are seniors."[2]  The Senate Special Committee also conservatively estimates that more than "10,000 Americans have been victimized through these schemes, with losses around $300 million."[3]   These Defendants utilize one or more of the following unlawful, false, misleading and unconscionable sales tactics:

a) Enticing customers to call them with false advertising offering to sell precious metal bullion coins at cost or minimum markups, when they do not have sufficient inventory to cover the advertisement;

b) Misrepresenting attributes of graded bullion to move customers from bullion to the over-price coins;

c) offering a short term "money back guarantee" which provides no real opportunity to investigate the true value of the coins;

d) advising customers to purchase unique bullion coins, when the coins are not unique;

e) misrepresenting to customers that "certified coins" will outperform other types of investments—without any specific underlying data supporting such assertions;

f) Using grading and marketing to deceptively sell bullion as some type of "modern numismatics," even though there are very large populations of the high-grade coins and/or the "certification" is commonly duplicated with minor expense;

g) misrepresenting the market value of "certified coins" in the customer portal to prevent or delay consumers from determining the actual market price of bullion coins.

h) Claiming a volatile market based upon the spot price of gold yet selling bullion coins at such exorbitant and fraudulent prices to make "market price" nothing but a gimmick;

i) Misrepresenting the value of numismatic coins;

---

[2]  *See Exploring the Perils of the Precious Metals Market*, United States Senate Special Committee on Aging,
   Summary of Committee Staff Investigation,
   *https://www.aging.senate.gov/download/precious-metals-market-committee-staff-investigation,* at 16.
[3]  *Id.* at 17.

    j)  Failing to disclose that the "spread" is a commission under the Texas securities laws;

    k)  Using various companies as intermediaries to drive the price of the coin to fraudulent levels;

    l)  Failing to display, disclose, or file required information regarding telephone solicitations; and,

    m)  various other acts and practices that may be uncovered during discovery.

**10.**    Dora Rowe is an elderly widow of 84 years of age suffering from memory impairment. In early 2019, Rowe was enticed by an American Gold Reserve advertisement in the National Rifle Association (NRA) magazine about gold coins at or near cost but with limited availability.  Mrs. Rowe contacted Defendants and purchased the coins.  She began to receive a constant barrage of phone calls from the Defendants' salespersons, notably Aaron Moore and Brian Hill, who double teamed her and convinced her to purchase modern graded bullion and some numismatic coins. During the initial phone conversations, Mrs. Rowe admitted that she knew nothing about precious metals or numismatics.  Over the next approximately two years, the Defendants engaged in numerous personal conversations to learn more of her interests and establish a rapport. The salespersons offered to assist Mrs. Rowe and learned that she was an elderly widow; thus, began the financial exploitation of Rowe that can only be described as a cruel form of elder abuse.  Defendants were very effective in targeting and inducing Mrs. Rowe to "invest" a large portion of her life savings in over-priced coins. Defendants mislead Rowe and enticed her into believing the "historical coins" "certified coins" and "graded modern bullion"[4] were a sound

---

[4]  The coin's grade is a numerical value, commonly referred to as the *Sheldon scale* that ranges between 1 and 70. The most valuable coins are uncirculated coins, commonly referred to as mint state (MS) and designated with grades from 60 to 70.  Thus, a coin with a grade MS-70 is a perfect coin in original, uncirculated condition.  PF-70, also PR-70, is a reference to "Proof 70", is another term to signify the coin has flawless characteristics but that the mint was intended for collectors. It is not a higher grade than MS-70 (Mint State 70), which is the highest grade for general circulation. The numerical grade is assigned based on a number of attributes, such as luster (i.e. shininess), strike (i.e. how well the mint connected with the blank coin in manufacturing), and color (i.e. the dye variations used in striking the coin). The grades are assigned for a nominal fee by independent grading services. The industry considers the premier professional grading services to be Numismatic Guaranty Corporation (NGC) and Professional Coin Grading Services (PCGS).

investment, that she was getting "good deals," the coins would retain their value, and that the coins were unique and/or rare. Defendants failed to advise Rowe that she was paying substantially more than the fair market price of for the coins, and incurring immediate and substantial losses with each transaction. Over the course of two years, involving approximately fifty-two (52) transactions, Defendants convinced Rowe to purchase coins in the amount of at least Seven Hundred forty-Two Four Hundred Seventy-Four and 80/100 Dollars  ($742,474.80), with illusory marketing discounts that reduced the total to Seven Hundred Thirty-Seven Thousand Three Hundred Eighteen and 70/100 Dollars ($737,318.70).  During November 2021, Mrs. Rowe's daughter assisted her in evaluating her collection of coins after a local respected coin dealer became concerned about her purchases because he felt she had been unfairly treated. Mrs. Rowe's daughters discovered that Rowe's coins fair market value at that time that was significantly less than what Mrs. Rowe paid; and, Mrs. Rowe would never realize a return on investment as represented by the Defendants.  Contrary to what Mrs. Rowe was led to believe by Defendants' representations, the actual value of the coins on the day of purchase was approximately One Hundred Thirty-Six Thousand Three Hundred Ninety-One and 00/100 Dollars ($136,391.00), resulting in an immediate loss at the time of sale of Six Hundred Thousand Nine Hundred Twenty-Seven and 00/100 Dollars ($600,927.70).[5] The Defendants sold coins to Rowe that were routinely over 400% markup, and some as high as 6000% markup, well above the "fraud" red-line established by the Texas Attorney General.[6] Mrs. Rowe will never recover her initial investment, much less realize any investment return.

---

[5] A list of the coins sold to Dora Rowe are found on Exhibit A, attached.
[6] The Texas Attorney General established guidelines indicating gold coin selling for over 100% markups are fraudulent.  *See* the Texas Attorney General Gold Coins Fact Sheet Advisory, April 2017 *https://www.texasattorneygeneral.gov/files/cpd/17084_gold-coins_factsheet.pdf*

11.     Rowe incurred actual damages of Six Hundred Ten Thousand Dollars ($610,000.00); and, consequential damages in market gains.[7]  The above-listed coins were not worth the prices Rowe paid for them when they were purchased, and they have not attained such value to date nor provided the safe haven or return on investment as promised by Defendants.

12.     Defendants and their employees utilized unlawful, false, misleading and unconscionable high-pressure sales tactics to convince Rowe to purchase the grossly overvalued coins by, *inter alia*, knowingly, intentionally and representing:

   **(a)**   Misrepresenting the value of the coins with full knowledge that the coins were not worth the value at which they were purchased and will never provide the return of investment as represented;

   **(b)**   Failing to disclose that the fair market value of the "certified coins" was substantially less than the amount paid;

   **(c)**   Misleading Rowe into believing that Defendants wanted to assist her in making sound investments;

   **(d)**   Misleading Rowe as to the performance of "certified" bullion coins; and,

   **(e)**   Misrepresenting attributes of graded bullion ("certified coins") to move Dora Rowe from bullion to the over-price coins;

   **(f)**   Misrepresenting qualities of the coins with promises that the investment in certified coins will substantially appreciate;

   **(g)**   Advising Rowe to purchase unique bullion coins, when the coins are not unique;

   **(h)**   Misrepresenting to customers that "certified coins" will outperform other types of investments—without any specific underlying data supporting such assertions;

   **(i)**   Using grading and marketing to deceptively sell bullion as some type of "modern numismatics," even though there are very large populations of the high-grade coins and/or the "certification" is commonly duplicated with minor expense;

   **(j)**   Misrepresenting the market value of "certified coins" on their website to prevent or delay consumers from determining the actual market price of bullion coins.

---

[7] Attached as Exhibit 2 is a tabulation of the consequential damages calculated as the losses incurred by Rowe by taking the difference between the value of the bullion coins (spot price) when purchased and the value of the bullion coins (spot price) as of June 16, 2020.

**(k)**    Offering marketing gimmick of "discounts" when such discounts were illusory due to the grossly over-priced coins;

**(l)**    Misrepresenting the fair market value of its proof and commemorative coins the prices are significantly higher than bullion coins containing the same amount of gold.

**(m)**    Failing to display, disclose, or file required information under the Texas Telephone Solicitation Act regarding telephone solicitations;

**(n)**    Taking commissions in violation of the Texas Securities Act; and,

**(o)**    Performing other acts of deception, fraudulent business practices and misrepresentation that may be discovered during the course of this litigation.

**13.**    The sales of over-priced coins to Rowe are neither isolated incidents nor unique to Rowe. Using these fraudulent tactics, these Defendants have sold millions of dollars of over-priced coins to thousands of other consumers for over four years, indicating a continuing open-ended scheme and pattern of fraudulent conduct.

**14.**    As a direct and/or proximate result of Defendants' above wrongful acts and practices, Rowe suffered (and continues to suffer) substantial economic damages, which Defendants refuse to remedy.  This case has resulted.

**COUNT I**
**FRAUDULENT INDUCEMENT**

**15.**    The preceding factual statements and allegations are incorporated herein by reference.

**16.**    Under Texas law, the essential elements of a cause of action for fraudulent inducement are: (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury.

**17.**    Defendants, by and through the AGR salespersons, utilized one or more of the above unlawful, false, misleading, and unconscionable sales tactics to fraudulently induce Rowe into the purchases of the over-priced coins. Specifically, Defendants, by and through their employees

intentionally and fraudulently induced Rowe by: misrepresenting material facts which Defendants knew were false at the time they were made with the intent to induce Rowe into purchasing the coins for the benefit of the Defendants and at the expense of Rowe; misrepresenting that the price paid for the coins was a current fair value of the coins with full knowledge that the coins were not worth a fraction of the value at which they were sold and purchased; misrepresenting that historically the "investment grade" coins realize significant returns, which they do not; misrepresenting that the "certification" adds a substantial value to the coins when it does not; misrepresenting that it takes at least three to five years for a return on investment of the "investment grade" coins to occur, when such return does not occur; misrepresenting that Rowe will be able to market her coins for a price similar to Defendants' pricing, which she cannot ethically do; and other misrepresentations that may be exposed during discovery. Defendants, by and through their salespersons, made the above false representations to Rowe with the intent to induce Rowe into entering the contracts to purchase the coins. Plaintiff relied upon these misrepresentations to make the initial purchases resulting in substantial losses at the moment of sale.

**18.** Defendants, by and through the ARG salespersons, continued their fraudulent inducement after the original purchases by providing false and misleading sales marketing data to entice her into buying coins or to "complete" her collection with the intent to induce her into buying more over-priced coins. Defendants made those representations with full knowledge that such representations were false when made with the intent to induce Rowe to purchase the grossly overvalued coins which, in fact, she purchased to her financial detriment and Defendants' financial gain. As a direct and/or proximate result of Defendants' false and misleading representations about the overvalued coins, Plaintiff suffered (and continues to suffer) damages

in the form of, *inter alia,* the amounts paid to Defendants for the bullion coins in excess of their value and mental anguish damages.

19.    Defendants, by and through the ARG salespersons, committed the tort of fraudulent inducement in their verbal sales pitches to Rowe regarding "certified coins" and numismatic coins; through the falsehoods, half-truths, and omissions in their written promotions; and, through the errant and misleading website that published an inaccurate and false representation of the market value of the coins. Moreover, Defendants' false representations and/or omissions were made knowingly and intentionally or, at the very least, in reckless disregard of Plaintiff's rights and interests.

20.    Because Plaintiff justifiably relied upon Defendants' material misrepresentations and would never have entered into any contract with Defendants to purchase the coins at issue absent those misrepresentations, Defendants' wrongful actions constitute fraudulent inducement at Texas common law.

**COUNT II**
**FRAUD AND/OR FRAUDULENT CONCEALMENT**

21.    The preceding factual statements and allegations are incorporated herein by reference.

22.    In order to sell the overvalued coins to Rowe, Defendants utilized one or more of the above unlawful, false, misleading and unconscionable high-pressure sales tactics typical of the precious metals/coins/bullion direct sales industry.  Specifically, Defendants and their employees falsely and/or misleadingly represented to Rowe that she was a preferred customer, Rowe "needed the coins," Rowe was "getting a good deal," and Rowe "would not lose any money" on the purchases. Defendants and their employees also falsely represented the current value of the coins

with full knowledge that the coins were not worth the value at which they were purchased nor will the coins attain the return of investment as promised.

23.    Defendants, by and through their salesmen, made the above false representations to Rowe with the intent that she relies upon them and with full knowledge that such representations were false when made. Rowe relied on Defendants' material and false representations when deciding to purchase the grossly overvalued coins which, in fact, she purchased to her financial detriment and Defendants' financial gain.  As a direct and/or proximate result of Defendants' false and misleading representations about the overvalued coins, Rowe suffered (and continue to suffer) damages in the form of, *inter alia,* the amounts paid to Defendants for the gold coins in excess of their value, consequential damages related to the funds she borrowed to purchase the coins and mental anguish damages.

24.    By virtue of the confidential business relationship between Plaintiff and Defendants, Defendants had a duty to disclose the above concealed material facts to Plaintiff.  Their deliberate silence, when they had a duty to speak, and the resulting nondisclosure of the above concealed material facts, is the equivalent of false representations and/or omissions.  Such false representations and/or omissions were made knowingly and intentionally or, at the very least, in reckless disregard of Plaintiff's rights and interests.

25.    Plaintiff justifiably relied on Defendants' false representations and/or omissions to her financial detriment by purchasing the grossly overvalued coins. Defendants' wrongful actions constitute fraud at Texas common law.

26.    Defendants concealed their wrongful actions with the intent to mislead and defraud Plaintiff. Plaintiff was not aware of, nor, through the exercise of due diligence, could have become aware of Defendants' wrongful actions until such wrongful actions brought to light by

third parties.  Due to the Parties' confidential business relationships, which were predicated on their mutual trust and confidence, and Defendants' superior knowledge and/or means of knowledge, Defendants had a duty to disclose to Plaintiff the above materially false information. Defendants' failure to do so constitutes fraudulent concealment at Texas common law.

**COUNT III**
**NEGLIGENT MISREPRESENTATION**

27.     The preceding factual statements and allegations are incorporated herein by reference.

28.     Defendants made certain representations to Plaintiff in the course of their business and in transactions in which Defendants had a substantial monetary interest.  Defendants also supplied false information for the specific purpose of guiding Plaintiff in her purchase of the grossly overvalued coins.

29.     Defendants, however, failed to exercise reasonable care and competence in obtaining and communicating such information to Plaintiff by, *inter alia,* utilizing one or more of the above unlawful, false, misleading and unconscionable sales tactics typical of the precious metals/coins/bullion direct sales industry and/or making the above false and material misrepresentations and omissions.

30.     Rowe justifiably relied on Defendants' negligent misrepresentations when purchasing the grossly overvalued coins, which directly and/or proximately caused her to suffer damages to the financial benefit of Defendants. Rowe continued to justifiably rely upon Defendants' negligent misrepresentations in their oral representations, its websites, and its various print advertisements regarding the grossly overvalued coins, which directly and/or proximately caused her to suffer damages to the financial benefit of Defendants. Defendants' wrongful conduct constitutes negligent misrepresentation at Texas common law.

**COUNT IV**

**EXPLOITATION OF AN ELDERLY INDIVIDUAL**

**31.**     The preceding factual statements and allegations are incorporated herein by reference.

**32.**     The Defendants, intentionally and knowingly, improperly used the resources of Dora Rowe for their own monetary and personal benefit, profit and gain.   When Defendants began the exploitation of Dora Rowe, she was 81 years of age.  Mrs. Rowe is considered elderly under Section 22.04 (c)(2) of the Texas Penal Code.   Such acts by Defendants constitute a third-degree felony under Section 32.53(b) of the Texas Penal Code.  Rowe seeks restitution and punitive damages for such exploitation

**COUNT V**

**NEGLIGENCE**

**33.**     The preceding factual statements and allegations are incorporated herein by reference.

**34.**     Defendants negligently valued, promoted, marketed, advertised and sold grossly overvalued coins to Plaintiff. In doing so, Defendants owed a duty to Plaintiff to exercise reasonable care in valuing, promoting, marketing, advertising and selling the coins. Defendants breached their duty to Plaintiff by failing to exercise reasonable care in valuing, promoting, marketing, advertising and selling the coins to Plaintiff. Defendants' wrongful conduct directly and/or proximately caused Rowe to suffer damages. Defendants' wrongful conduct constitutes negligence at Texas common law.

**COUNT VI**

**CONSPIRACY**

**35.**     The preceding factual statements and allegations are incorporated herein by reference.

36.     Defendants (and possibly others), either working together as a combined group or in sub-combinations of two or more, affirmatively conspired to engage in the wrongful actions set forth above.   By doing so, Defendants conspired to accomplish an unlawful purpose or a lawful purposed by an unlawful means.   As such, Defendants conspired to commit the wrongful actions outlined in Counts I-IV, above, all of which directly and proximately caused Plaintiff to sustain actual and consequential damages.   Defendants' wrongful actions constitute civil conspiracy at Texas common law.

**COUNT VII**
**<u>MONEY HAD AND RECEIVED</u>**

37.     The preceding factual statements and allegations are incorporated by reference.

38.      By their above-described wrongful actions and/or inaction, Defendants hold money obtained by a) the wrongfully charged and collected purchase prices paid by Rowe for the grossly overvalued coins misrepresented and sold to her by Defendants; and b) coins impermissibly sold to third parties and the funds retained without payment to Rowe or replacement of her coins, that, in equity and good conscience, belongs to Rowe.   Defendants, therefore, should be compelled to refund such wrongfully charged and collected funds under the equitable doctrine of money had and received.

**COUNT VIII**
**<u>UNJUST ENRICHMENT</u>**

39.     The preceding factual statements and allegations are incorporated herein by reference.

40.     Defendants (and possibly other persons and entities, including Defendants'. employees) have been unjustly enriched by (i) being paid an excessive value for coins that are not supported by any reasonable valuation; (ii) using the fraudulently obtained revenues and profits paid by

14

Rowe, and (iii) generating a return on the amounts described in (i) and (ii).  Accordingly, Rowe seeks to impose a constructive trust over (and recover) all amounts by which Defendants (and possibly other persons and entities, including Defendants' employees) have been unjustly enriched.

### COUNT IX
### <u>VIOLATION OF THE TEXAS SECURITIES ACT</u>

**41.**     The preceding factual statements and allegations are incorporated herein by reference.

**42.**     Defendants violated Tex. Civ. Stat. Art. 581 (hereinafter Texas Securities Act) to wit: Defendants are "dealers" as that term is defined under Article 581-4 (C) in that they engage in this state, directly or through an agent, in selling and/or offering for sale investments; and, owed a fiduciary duty to the Plaintiff. Defendants earned compensation through the sale of precious metals on the "spread"[8] on the sale of the metals. Indeed, the sales personnel received additional commissions based on the amount of sales and the profit margin of sales.  However, Defendants have failed to register as required under Section 16 of the Texas Securities Act.

**43.**     Defendants Jounte A. McDaniel, Kimberly D. Poulard, Brandon J. McDaniel are "control persons" and/or "aiders" under Article 581-33(F), and are personally and jointly liable for the damages sustained by Plaintiff.

**44.**     The sale of precious metal American Eagles and bullion are "securities" under Article 581-4(A) as a form of commercial instrument representing an interest in the assets of the United States used for investment purposes. See, *In the Matter of TMTE, Inc., aka Metals.Com, Chase Metals, LLC, And Chase Metals, Inc.; Walter Vera; Michael Kendall And Athena Hunter*, 2019 Tex. Sec. Lexis 8 (Order No. Enf-19-Cdo-1777) (May 1, 2019).

---

[8] The "spread" is the difference between the price paid by potential investors and the wholesale price of precious metals paid by the Defendants.

45.     The actions by Defendants are "fraudulent" as defined under Article 581-4(F), because such actions, representations and omissions by Defendants are: misrepresentations of relevant facts: representations and/or predications as to the future earnings not made honestly and in good faith; an intentional failure to disclose a material fact; the gaining, directly or indirectly, through the sale of any security, a profit so gross or exorbitant as to be unconscionable; and a conspiracy and  scheme to obtain such profit.

46.     By virtue of the confidential business relationship between Plaintiff and Defendants, Defendants had a duty to disclose concealed material facts to Plaintiff.  Their deliberate silence, when they had a duty to speak, and the resulting nondisclosure of the above concealed material facts, is the equivalent of false representations and/or omissions.  Such false representations and/or omissions were made knowingly and intentionally or, at the very least, in reckless disregard of Plaintiff's rights and interests.

47.     Under Article 581-32 (C), Plaintiff seeks the greater of the economic benefit to the Defendants or $20,000.00 for each of the Fifty-Two (52) fraudulent transaction for a total of $1,040,000.00; plus, because Mrs. Rowe was over 65 years of age, Plaintiff seeks additional statutory recovery of $250,000.00.

48.     Under the Texas Securities Act, Plaintiff also seeks restitution for the original purchase price, consequential damages, attorney fees and expenses, and court costs.

## **ALTER-EGO**

41.     Based upon information and belief, Jounte A. McDaniel, Kimberly D. Poulard, Brandon J. McDaniel, individually and collectively, use various corporate forms as alter-egos and as mere tools or business conduits to shield assets and thus cause a diminution of available resources from which Mrs. Rowe may obtain satisfaction of the damages directly and/or proximately

caused by Defendants' wrongful conduct.  All of these entities operate, directly or indirectly, under the same roof.   These entities shared employees, corporate leadership and were undercapitalized as they routinely sweep profits from the operations of ARG.   Upon information and belief, there are undocumented funds transfers between the corporations and/or partnerships; and there is an unclear allocation of profit and losses between these entities.   In short, the respective entities are substantially one and the same with Jounte A. McDaniel, Kimberly D. Poulard, Brandon J. McDaniel; and, the relationship between them is an illegitimate use of corporate form:

## **RESPONDEAT SUPERIOR**

42.     The preceding factual statements and allegations are incorporated herein by reference.

43.     Defendants also are liable for the above wrongful acts committed by their employees during the course and scope of their employment by the Defendants; to wit, the employees' wrongful conduct was committed (i) within their general authority, (ii) in furtherance of Defendants' business, and (iii) to accomplish the objective for which the employees were hired (*i.e.*, selling overvalued coins to customers like Plaintiff)—all of which directly and/or proximately caused Plaintiff to suffer damages to the financial benefit of Defendants—under the doctrine of *respondeat superior.*

## **RELIEF REQUESTED**

44.     The preceding factual statements and allegations are incorporated herein by reference.

45.     **ACTUAL AND CONSEQUENTIAL DAMAGES.**  In the alternative, and as direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered (and continues to suffer) damages in the form of, *inter alia*, the amounts paid to Defendants for the gold coins in excess of their value.

Plaintiff is entitled to recover consequential damages related to lost investments when she was lured into purchasing the coins and the mental anguish she has suffered in connection with these transactions—in an amount to be determined by the trier of fact.  All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

46.   **EXEMPLARY DAMAGES.**   Defendants' wrongful actions (and failure to disclose such wrongful actions) were committed intentionally, willfully, with malice and/or with conscious and/or reckless disregard for Plaintiff's rights and interests.  Accordingly, Plaintiff also is entitled to an award of punitive damages against Defendants, both as punishment and to discourage such wrongful conduct in the future.

    **(a)**   Punitive damages are not capped or limited because Defendants' wrongful conduct constitutes a felony under Section 32.53 in that Defendants exploited the elderly Mrs. Rowe for personal profit and gain. *See* Section 41.008(c)(13) of the Texas Civil Practice and Remedies Code.  All conditions precedent to Plaintiff's claim for relief have been performed and/or occurred; additionally, or alternatively,

    **(b)**   Plaintiff also is entitled to double damages for Defendants' knowing, willful and intentional wrongful under Texas Common Law.   All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred; additionally, or alternatively,

    **(c)**   Under Texas Securities law**,** Plaintiff is entitled to recover the <u>greater</u> of the economic benefit to the Defendants or $20,000.00 for each of the fifty-two (52) fraudulent transaction for a total of $1,040,000.00; additionally, because Mrs. Rowe was over 65 years of age, Plaintiff seeks additional statutory recovery of $250,000.00.

47.   **ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS.**   Plaintiff also is entitled to recover her reasonable and necessary attorneys' fees, litigation expenses and court costs in

prosecuting this action pursuant to, *inter alia*, Chapter 38 and/or Chapter 42 of the Texas Civil Practice and Remedies Code.

        **WHEREFORE,** Plaintiff requests that upon final trial or hearing, judgment be awarded against the Defendants, jointly and severally for:

(1)   actual damages to be determined by the trier of fact;

(2)   exemplary damages;

(3)   statutory damages;

(4)   all amounts by which Defendants have been unjustly enriched;

(5)   an equitable accounting for all benefits, consideration and profits received, directly or indirectly, by Defendants, including imposing a constructive trust, the voiding of unlawful transfers, and the disgorgement of all ill-gotten gains and profits;

(6)   pre- and post-judgment interest at the highest legal rates;

(7)   investigative costs, deposition expenses, witness fees;

(8)   attorneys' fees and litigation expenses incurred through the trial and any appeals of this case;

(9)   costs of suit; and

(10)   such other and further relief that the Court deems just and proper.

        Respectfully submitted,

        **STEVENS LAW FIRM**
        1782 Mountain Springs
        Canyon Lake, TX 78133
        (409) 880-9714

        By: */s/ R. Lyn Stevens*_____
           R. Lyn Stevens
           State Bar No. 19189020
           Eastern District Bar No. 3711

        **ATTORNEYS FOR PLAINTIFF,**
        **DORA ROWE**

## EXHIBIT A

| Invoice Date | Invoice # | Description | Total Paid | FMV | % mark up |
|---|---|---|---|---|---|
| 10/30/2019 | 4133 | 1986 $10 Gold American Eagle MS69 NGC | $  6,380.00 | $   810.00 | 688% |
| 2/24/2020 | 4134 | 1986 $5 Gold American Eagle MS69 | $  1,590.00 | $   300.00 | 430% |
| 2/24/2020 | 4134 | 1986 $25 Gold American Eagle MS69 | $  5,990.00 | $ 1,620.00 | 270% |
| 2/24/2020 | 4134 | 1986 $50 Gold American Eagle MS69 | $ 11,990.00 | $ 2,175.00 | 451% |
| 12/16/2019 | 96 | 2006-W $50 American Buffalo PCGS PR 70 DCAM | $ 13,700.00 | $ 2,517.00 | 444% |
| 1/29/2020 | 156 | 2000-V 10 bimetal Lib Cong Comm PF69 | $ 15,980.00 | $ 4,000.00 | 300% |
| 3/2/2020 | 214 | 1986 $5 Gold American Eagle MS69 | $  1,690.00 | $   300.00 | 463% |
| 3/2/2020 | 214 | 1986 $25 Gold American Eagle MS69 | $  4,400.00 | $ 1,620.00 | 172% |
| 3/2/2020 | 214 | 1986 $50 Gold American Eagle MS69 | $ 10,200.00 | $ 2,175.00 | 369% |
| 3/2/2020 | 239 | 1986 $5 Gold American Eagle MS69 | $   845.00 | $   300.00 | 182% |
| 3/2/2020 | 239 | 1986 $25 Gold American Eagle MS69 | $  2,200.00 | $ 1,620.00 | 36% |
| 3/2/2020 | 239 | 1986 $50 Gold American Eagle MS69 | $  5,100.00 | $ 2,175.00 | 134% |
| 3/23/2020 | 316 | 1986-W $50 Gold American Eagle  PR69 Ultra Cameo | $  6,995.00 | $ 2,250.00 | 211% |
| 5/5/2020 | 400 | 2009 $20 Liberty MS70 Ultra High Relief | $ 11,500.00 | $ 3,050.00 | 277% |
| 5/18/2020 | 458 | 2009 $20 Liberty MS70 Ultra High Relief | $ 11,995.00 | $ 3,000.00 | 300% |
| 6/15/2020 | 531 | 2002 $50 Gold American Eagle MS 70 | $  7,995.00 | $ 2,050.00 | 290% |
| 6/29/2020 | 567 | 2002-W $50 Gold American Eagle PF70 | $  7,995.00 | $ 2,300.00 | 248% |
| 6/18/2020 | 538 | 2002 $50 Gold American Eagle MS 70 | $  7,995.00 | $ 2,250.00 | 255% |
| 6/18/2020 | 538 | 2002 $50 Gold American Eagle MS 70 | $  7,995.00 | $ 2,250.00 | 255% |
| 7/7/2020 | 635 | 2006-W 3-coin Set $50 Gold American Eagle Anniversary MS70 | $ 33,995.00 | $ 8,550.00 | 298% |
| 7/23/2020 | 710 | 2006-W $50 Gold American Eagle Burnished MS70 | $  9,995.00 | $ 2,775.00 | 260% |
| 8/18/2020 | 812 | 2003-W $10 Gold First Flight Centennial MS70 | $  6,995.00 | $   850.00 | 723% |
| 9/1/2020 | 922 | 1907 $20 St Gaudens PCGS MS63 | $ 12,995.00 | $ 2,750.00 | 373% |
| 10/6/2020 | 1277 | 2007-W $10 Gold Comm. Martha Washington MS70 | $  5,995.00 | $ 1,750.00 | 243% |
| 10/19/2020 | 1342 | 2007-W $10 Gold Comm. Abigail Adams MS70 | $  5,995.00 | $ 1,750.00 | 243% |
| 11/3/2020 | 1441 | 2018 $10 Gold American Eagle Mint Error MS69 | $ 10,000.00 | $   600.00 | 1567% |
| 11/13/2020 | 1493 | 2019 $10 Gold American Eagle Mint Error MS69 | $  6,645.25 | $   615.00 | 981% |
| 12/21/2020 | 1666 | 1984 $10 Gold Comm. Olympic Runner PR69 Ultra Cameo | $  6,995.00 | $   925.00 | 656% |
| 12/21/2020 | 1664 | 1984 $10 Gold Comm. Olympic Runner PR69 Ultra Cameo | $  6,995.00 | $   925.00 | 656% |
| 12/28/2020 | 1679 | 2010 $50 Gold American Eagle Mint Error MS 69 | $ 16,995.00 | $ 2,990.00 | 468% |
| 1/11/2021 | 1722 | 2014-W Gold American Eagle Burnished MS69 ME-Obv | $ 16,995.00 | $ 2,990.00 | 468% |
| 1/8/2021 | 1710 | 1924 $20 Gold St Gaudens MS63 Liberty ME-Obv Struck Thru | $ 16,995.00 | $ 2,175.00 | 681% |
| 1/19/2021 | 1779 | 2017 $25 Pd American Eagle Burnished PCGS MS69 | $ 17,995.00 | $ 2,085.00 | 763% |
| 1/26/2021 | 1824 | 2019-W $25 Pd American Eagle High Relief Reverse PF69 | $ 17,995.00 | $ 2,800.00 | 543% |
| 2/12/2021 | 1945 | 1998 $50 Comm. World Trade Center PCGS MS 69 | $ 13,995.00 | $ 2,990.00 | 368% |
| 3/1/2021 | 2017 | 2016-W 10¢ Gold Mercury Dime PCGS SP70 | $  4,995.00 | $   850.00 | 488% |
| 3/1/2021 | 2017 | 2017 Gold 1/2 Oz South African Kugerrand WTC | $  7,995.00 | $ 1,410.00 | 467% |
| 3/1/2021 | 2018 | 2018 $15 Gold Australian Kangaroo Gem | $ 20,985.00 | $   222.50 | 9331% |

| | | | | | |
|---|---|---|---|---|---|
| 3/1/2021 | 2018 | 2018 1/10 Oz South African Kugerrand Gem | $ 6,995.00 | $ 226.50 | 2988% |
| 3/5/2021 | 2099 | 2008-W $25 Gold American Buffalo PCGS PR69 | $ 15,990.00 | $ 3,050.00 | 424% |
| 3/15/2021 | 2170 | 2014-W 50¢ Gold John F Kennedy Ultra High Relief  PR 69 | $ 11,995.00 | $ 1,200.00 | 900% |
| 3/15/2021 | 2170 | 1999 $5 Silver Canadian Maple Leaf WTC Gem Uncirculated | $ 6,995.00 | $ 229.00 | 2955% |
| 3/15/2021 | 2170 | 2015-W $100 Gold Liberty PCGS MS70 High Relief | $ 11,995.00 | $ 2,650.00 | 353% |
| 3/23/2021 | 2233 | 2008-W Gold American Buffalo PCGS PF 70 | $ 5,995.00 | $ 800.00 | 649% |
| 3/23/2021 | 2233 | 2008-W Gold American Buffalo PCGS PF 70 | $ 6,995.00 | $ 1,625.00 | 330% |
| 3/23/2021 | 2235 | 2008-W Gold American Buffalo PCGS PF 70 | $ 4,005.00 | $ 800.00 | 401% |
| 3/23/2021 | 2235 | 2008-W Gold American Buffalo PCGS PF 70 | $ 6,995.00 | $ 1,625.00 | 330% |
| 5/18/2021 | 2774 | 2020 2-coin set Silver 400th Anv Mayflower UCameo NGC MS70 | $ 13,995.00 | $ 365.00 | 3734% |
| 5/18/2021 | 2773 | 2020 2-coin set Silver 400th Anv Mayflower UCameo NGC MS70 | $ 13,295.30 | $ 365.00 | 3543% |
| 6/15/2021 | 3618 | 2021 4-coin set Gold American Eagle Type 2 PCGS MS70 | $ 15,980.00 | $ 1,250.00 | 1178% |
| 6/15/2021 | 3618 | 2021 4-coin set Gold American Eagle Type 1 PCGS MS70 | $ 15,980.00 | $ 2,988.00 | 435% |
| 6/29/2021 | 3246 | 2013-W $50 Gold American Buffalo NGC PF69 | $ 14,995.00 | $ 2,500.00 | 500% |
| 7/5/2021 | 3303 | 2013-W $50 Gold American Buffalo NGC PF69 | $ 11,704.00 | $ 2,500.00 | 368% |
| 7/28/2021 | 3522 | 1998 $50 Gold Canadian Mapleleaf  WTC | $ 13,995.00 | $ 2,350.00 | 496% |
| 7/28/2021 | 3523 | 1998 $50 Gold Canadian Olympic Runners WTC Gem Uncir | $ 13,995.00 | $ 3,096.00 | 352% |
| 8/3/2021 | 3573 | 1984 Gold 1 Oz South African Krugerrand Gem Uncir WTC | $ 13,995.00 | $ 250.00 | 5498% |
| 8/10/2021 | 3611 | 2009 $50 Gold American Buffalo PCGS MS70 | $ 13,995.00 | $ 2,378.00 | 489% |
| 9/20/2021 | 3819 | 1900 Gold $20 Liberty PCGS MS 64 | $ 27,990.00 | $ 6,800.00 | 312% |
| 9/21/2021 | 3834 | 1900 Gold $20 Liberty PCGS MS 64 | $ 27,990.00 | $ 7,300.00 | 283% |
| 9/29/2021 | 3888 | 2008 $25 Gold American Buffalo Ultra Cameo NGC PF69 | $ 11,995.00 | $ 1,825.00 | 557% |
| 9/29/2021 | 3892 | 2008 $25 Gold American Buffalo NGC MS 69 | $ 11,995.00 | $ 1,450.00 | 727% |
| 10/8/2021 | 3956 | 2021-W $100 Gold Liberty Ultra Cameo NGC PF70 | $ 15,995.00 | $ 4,095.00 | 291% |
| 10/8/2021 | 3957 | 2009 $20 Gold Double Eagle Ultra High Relief NGC MS70 | $ 16,145.00 | $ 3,250.00 | 397% |
| 10/12/2021 | 3972 | 2019-W $100 Pt American Eagle High Relief PCGS SP70 | $ 14,995.00 | $ 3,159.00 | 375% |
| 10/13/2021 | 3979 | 2008-W $25 Gold American Buffalo Burnished PCGS SP69 | $ 11,395.25 | $ 1,500.00 | 660% |
| | | Total Purchase Cost | $ 742,474.80 | $ 136,391.00 | 844% |
| | | Less invoice discounts | -$ 5,156.10 | | |
| | | Less Total FMV | -$ 136,391.00 | | |
| | | Total Losses | $ 600,927.70 | | |